August 4, 2015 Good morning, my name is Fred Lauber with the Law Firm of Dixton G. Perot and I represent the appellants Delmarva Power & Light and Atlantic City Electric. This appeal involves two of the more than 60 claims against the United States for failure to discharge its obligation to remove spent nuclear fuel under the Nuclear Waste Policy Act. We have a very focused issue before us with respect to this assignment. So why don't you focus directly on that issue? Yes, the issue is whether or not the government can waive the assignment of an unallowed liquidation claim, can waive the assignment of a claims act. But isn't there a preliminary question whether you would like a proper taking claim? And it bothers me, it's not clear to me, what property of your company do you say the government took? The physical property on which the spent nuclear fuel has to be stored. A nuclear power plant, like other power plants, has a plant that has a cooling tower and it has a perimeter, space. But I understood your claim to be one that the sale of, I don't know if I can say this, the industry money. That's correct, the cost of the techniques. So-called. Correct. So your claim relates to the value of the property sold? That's correct. But value isn't property in itself. Value is a characteristic. I'm curious as to what property of your company was taken. The physical property on which the spent nuclear fuel was stored and was not going to be removed. I don't understand how it's been taken. It seems to me to be your case. Please tell me if I've misunderstood it. Is that what was taken was your contractual right to have the government remove it? No, sir. That's not your theory? That's not our theory. And it's not any of the theory in the cases that involve spent nuclear fuel. What was- The physical, I'll say- Your claim, your property was taken. Because we couldn't use that property for any other purpose. We couldn't use it to expand the plant. It wasn't available for the security clearance. And what you stored in the- That's correct. Nuclear, these rods are stored in 40 ton concrete casks that are large. And they occupy space on the property. The statute required the government, gave the government 15 years, during the course of which they collected $20 billion, to develop a national repository to which they would remove these casks. And so the nuclear power plants were designed to store 15 years worth of spent nuclear fuel. When the government failed to discharge its obligations, not only could the power plant not use the space that would have been made available had the fuel been removed, but now they had to continue storing fuel for a period of time much longer than 15 years. Is it a temporary change or a temporary change? Well, it depends on whether Yucca Mountain is built. But whether it's taken or not, I mean, the temporary versus- If the first English case is the most recent case on temporary versus permanent, right now I would argue that it's permanent taking because there's no indication as to when Yucca Mountain will be built, or when there'll be an alternative to Yucca Mountain. But your claim is that you're not able to put your property to its most profitable use. Is that right? Well, there's multiple impacts. You say you're taking the property where you've stored the nuclear waste, but you're using it. You're using it for something that happened in a way you didn't want to use it, but you're using it to store your nuclear waste. Well, that isn't the way we want to use it, and that's why it's taking on it. And when the property is taken and you're required to store this particular substance on the property, it impacts the value in many ways. It shortens the life of the plant, which means the decommissioning funds have to be topped up. It limits the ability to decommission the plant because you can't use explosives when you have spent nuclear fuel on the property. And it precludes you from expanding the plant and making use of that property. So your takings plan would be equivalent to PSCG's, too. I mean, everybody's got a similar taking. Has any court – what's the status of – I mean, there's so many of these cases out there. Has the question of whether or not there's a taking here been resolved yet? No. It's pending in the Rochester gas case. And maybe the Court of Federal Claims. Court of Federal Claims. The Boston Edison case has been tried, but that was tried on a contract where the takings was an alternate theory and the rule is that you can't pursue both at the same time. PSCG has a takings claim. Systems Fuel has a takings claim. There are a variety of these claims. None has yet been tried to conclusion. The diminished value theory, which is that the consequence of the government's action on the price of the plant has been tried. Judge Leto in the Boston Edison case is now pending a four-year-long appeal, found that the diminished value in that case was $40.04 million. But Judge Friedman, what we're trying to do is establish that there was a taking and that it did result in diminished value. That is the purpose of bringing this claim. What's happened here is that there has been a ruling by Judge Miller that we are not able to bring that claim. And, in fact, that ruling was postured so that nobody is able to bring the claim. So if you... You're not able to bring that case because Judge Miller said you would assign those claims. Well, there are no Assignment of Claims Act cases that don't involve assignments. First of all, the history of the assignment, it is our position and always has been that you cannot assign a diminished value claim to the buyer of property. They are the beneficiary of the diminished value. So our position with PS&G was you were the beneficiary of the diminished value. How can we assign a claim so that you can recover what is already there? You could assign and could have reserved claims, couldn't you? Well, the second argument is that if you assigned it... You could have said we will assign all this property to you except for our takings claim. We could have said that. We could have said that, and that would have reserved the takings claim. But our position, which we articulated to PS&G, was that we didn't assign the diminished value claim to them as the buyer. And if we did, it would have been an assignment to a subsequent property owner and it would have been null and void as an assignment. Is it your view that under the arbitration provision, the parties that agreed to arbitrate to speak in terms of... Correct. Is it your view that then the arbitrator had jurisdiction to determine whether or not the argument they were making to us was valid or not? I could talk all morning about the arbitration proceeding, arguing that they didn't have it. Well, yes, but not in a sufficient manner. I mean, the answer is no. We don't believe the arbitrator had jurisdiction to resolve that claim. Why not? Because, first of all, we believe that the arbitration was brought too late and therefore it was improper to invoke the arbitration clause. Second of all... But the agreement had an arbitration provision. It did, it did. And it was a provision between our clients and PS&G that did not involve the government. Our position in the arbitration is now consistent with the government's position. Our position is that the assignment either didn't occur or was null and void and the government agrees with that. The government has said time and time again, it is not bound by the arbitration. So we had an arbitration that may... The government says that the assignment is valid. The government says it would, absent the waiver, the assignment would be null and void. So the issue, and I thought this is what you were referring to, the issue is not whether the assignment is null and void. Judge Miller said it is. The government said it is. The question is, can you waive the Claims Act with regard to an otherwise invalid assignment? Judge Miller used the term vitiate the Claims Act. Well, let me go to that then. Do you agree that under the Contracts Act, at least the case law is clear, that the government does have the ability to waive the Claims Act? Under the Contracts Act, that's correct. So what is the difference between the Contracts Act and the Claims Act that would lead... And do you also agree that nobody has really decided the question of whether or not under the Claims Act the government can... That's correct. What's the difference then? There's a very... Actually, the most articulate explanation of this was from the lawyers for the government in this case, in the Rochester Gas case. In the Contracts Act case, the principle of that statute is that the government has the right to choose between the contracts. And the party with whom it contracts doesn't have the right to subcontract or assign this right to somebody else. And if they do, the contract is null and void. The contract is abrogated. Now, the government always has the option of accepting substitute performance, and often that's how those cases evolve. The government is deemed to have waived the statute because they've accepted performance from an alternate party. Under the Claims Act, an assignment in violation of the Claims Act is null and void, but the claim isn't extinguished. It's not like the Contract Act where the contract goes away. In the Claims Act, the claim isn't extinguished. It's the assignment that's null and void. I don't understand why the statute is enacted for the benefit of the government. Why the government can't say, in this case, we're waiving or accepting this? Because they're going to their owner for the purpose of extinguishing the claim. Their waiver in this case is a conditional waiver. We're waiving it. If they were just to say, we waive the Claims Act with regard to this assignment, and therefore PSE&G can bring the claim, they would run right smack into doubt, which says that a subsequent property owner can't bring a claim under the statute. What they've said, and there are a series of cases that said the government can't waive an assignment for one purpose and then seek to enforce it, can't waive the Claims Act for one purpose and seek to enforce it for another. What the government has done here is said, we waive the Claims Act so that the assignment is valid as per PSE&G, who can't bring the claim because they're the beneficiary of the diminished value. So in their notice they say any claim that is assigned to PSE&G is offset by the benefit that they've gained through the diminished value of the transaction. So you're saying the government does have the right to waive certain claims under the Claims Act, but then we have to ask a further question as to whether or not... For what purpose? We look into what purpose. Right, and if the purpose is to extinguish the claim... This is the precise case. The Supreme Court in doubt, and the Supreme Court in First English, talked about having rigid rules, axiomatic rules, that the government cannot manipulate the circumstances to their advantage or to the disadvantage of the other parties. And First English also said that the government cannot avoid the consequences of the taking through subsequent action. What's happened here is the government waited three and a half years in this litigation until they had reached an agreement with public service that public service wouldn't bring the claim. They then waive the Claims Act so that it's transferred to public service with the understanding that the claim won't be brought. And there is no dispute about that in this case. Public service has never claimed the right to bring this claim. So if you affirm Judge Miller's order, the claim, whether it's valid or not, Judge Friedman, we say it is, but I think you have to assume for this purpose that it is a valid claim, that claim is extinguished. And you run into this circuit's decision in Colonial Navigation, which says that, and you run into the text of the Claims Act, which says that the government has an obligation to pay claims to property taken under the Fifth Amendment, and it cannot be avoided through slight appeal. In Colonial Navigation, the principle of that case is that an invalid assignment doesn't extinguish the claim, it simply reverts to the original owner. We're asking for the opportunity to demonstrate that the government took the property and that it resulted in harm to us and to our ratepayers. We believe that we are the only party that can bring that claim because the beneficiary of that reduced value is public service. They paid less for the claim than its fair value because of the government's action. What we're seeking here is the right to bring that claim. What the government is seeking to do through the divisive conditional waiver is to avoid the claim altogether. I'm not sure I'm understanding everything. What if P.S. and G. wanted to purchase this, let's assume that there's no company, that they're paying for the assignment and everybody recognizes there might be future action against the government, so let's assume that everybody knows that they paid an extra premium of $30 million for this assignment stuff so that they can purchase the claim from you. Would that be different? Is your argument here predicated on this diminished value theory? First of all, it didn't happen. Second of all, it would be foolish for them to pay for the claim because they can't prove damages. Judge Wolski and the... No, but I'm just trying to understand what your theory is here, your theory related to diminished value. You're saying because they don't have a P.S.E.G. it has no claim left, and that's why we shouldn't allow the government to waive the claim. And is that predicated on what? I'll use Judge Wolski's example. It's sort of a silly example, but I think it makes sense. Judge Wolski in Rochester? No, no, Judge Wolski in Bailey. You have a dozen eggs. I'm a grocer, I have a dozen eggs, and I want to sell you a dozen eggs, and the government comes along and says, I'm appropriating one of your eggs. And so I sell that package of 11 eggs to the buyer for the price of 11 eggs. The buyer doesn't have the right to sue the government for the 12th egg because he only paid for 11 eggs. Here, public service paid for the value of the plant, the diminished value. Literally what happened was you took the value of, this is a power plant that produces electricity like any other power plant, and it has an ascertainable value. But because of the government's conduct here, they were required to incur significant additional expenses in order to store this additional fuel. Public service. And so the amount of that additional cost was deducted from the purchase price. So instead of $100 million for the plant, they paid $50 million for the plant. They can't, regardless of how you read the assignment, turn around and sue the government for $50 million. That would be a windfall for them. They've already gotten a $100 million plant for $50 million. It's our damage, it's our ratepayers that are now $50 million short on what would otherwise be, absent the government's conduct, would be a $100 million plant. And it's important to understand that any recovery in this case with regard to New Jersey assets is a recovery on behalf of the ratepayers and not on behalf of the company. We want to bring this claim. We claim that we are the only party that can do it. The government's attempt to block our ability to do that by a conditional waiver that won't permit public service to bring it extinguishes the claim. So if you affirm Judge Miller's ruling, nobody can bring this claim. And we believe that's a problem. Thank you very much. You've exhausted your rebuttal book. We'll give you two minutes. And come around here from the other side. I understand you've decided to split the argument. Is that correct? Yes, Your Honor. Eleven minutes and four minutes. All right. We'll try to honor that. We'll keep track of the clock, but we expect you to watch the clock this morning. Thank you, Your Honor. May it please the Court. In the government's initial brief, we raised three alternative bases for affirmance upon which this Court confirmed the trial court's decision. And in line with this Court's precedents in Lyon-Razins and U.S.-West communications and other cases, this Court is entitled to affirm the Court's judgment below on any of those grounds, despite the fact that the trial court only addressed the assignment issue. Well, could you, just because your time is so limited, address the argument made by the court before? Yes, I will, Your Honor. And I'll try to do it in the order that the court asks questions first. The court asks questions about whether there is actually a takings claim here at all. This issue has been addressed in several of the trial court cases, although not this one. The record here was fully developed on that point through motions for summary judgment, in fact, repetitive motions for summary judgment. But on pages 47 through 50 of the defendant's initial brief, we cited numerous decisions from the trial court in which takings claims, as similar to the one alleged here, have been dismissed because they are, in fact, simply dressed-up contract claims. There is no basis for certain particular... So I'm to contend that it's not a contract claim and it's not just the diminished value of the contract, but that the value of the property to make was diminished and, therefore, the claim was that they had less to sell because of the effect on the property. Well, certainly the government didn't take the actual physical land. So the Delmarva PSUG, who actually is the majority owner, the PSUG still has that land. The government never physically invaded. The only thing the government didn't do was begin accepting the plaintiff's fuel that was on that land by January 31, 1998. But the only basis for the government to be required to accept that fuel by that date or at all is based upon the contract. Absent the contract, the government has no obligation to accept any of that fuel. As a result, the rights that we're talking about here, that Delmarva's talking about, are created solely through a contract. Absent the contract, the government doesn't have to take any of that fuel and Delmarva has to keep it forever until it figures out what to do with it. Can't the property rights be created under the contract, sir? They can, but as this court discussed in the Castle decision, those rights, then, are determined through a contract action. Now, the government can take contract rights, but what it would have to do would be to take the contractual remedies, somehow preclude the remedies for a violation of that contract. The government has not done that here, as we see from all the lawsuits that are pending before the trial court. To understand their argument and the policy that had to be implemented was that what has been taken here is the right to use that property to its highest and best value, because instead of using it the way they'd like to use it, they have to use it to store this nuclear waste as a result of the government's breach of the contractual obligation to remove nuclear waste. And why do you say that isn't about obtaining it? Well, first, your honor, as you just mentioned, it's based upon that the only way that DOE, Department of Energy, has to accept the fuel is based on that contract with the date in it. To the extent that the plaintiff is complaining that absent that contract, it didn't have a contract, the NRC might impose various regulations on the manner in which spent fuel is stored because of danger to public health and safety. That's the plaintiff entered into a highly regulated industry. This was highly regulated long ago. And that in and of itself is not a taking. And that also would involve the NRC. The complaints here are based upon DOE's action. The government had told these people because of the nature of nuclear waste that you've got to leave at least 100 yards between the borders of where you store the nuclear waste and any plant that you're operating where people are working. So there's a field that's 100 yards wide that can't be used for anything. If you put a fence around it and say keep out, would you say the government had taken, would you say the government had taken at least temporarily interest in that property? Or would you say no, they can't complain about it because the only reason it should have been taken out is because of the contract? Well, I think it's not the situation we have here. But if we did, and unfortunately I'm not going to be prepared to fully address all the case law that goes into these areas. But my understanding is there are certain exceptions to the takings rules when things are, the government requires uses for public health and safety reasons. Now if it was taken for some other public purpose, perhaps there would be some kind of taking there. But my understanding is that where you have limitations based on public health and safety issues, there is a limitation on takings claims. But however, I'm not fully addressed to, I'm happy to supplement our briefing though if the court's interested in that. But as you pointed out, we don't need to reach the taking issue. Well, there is the alternative issue, Your Honor, about the assignment, which the court also discussed with counsel for plaintiff. Here, the court claims decision in Tuftco seems to be well settled law. In the GAO Red Book, which this court often refers to for guidance on legal issues, at page, volume 3, page 12-210, it talks in great detail about how this is a well settled issue. The Assignment of Claims Act is in fact for the benefit of the government, for the protection of the government. Because of that, the government is entitled to waive those protections when it so chooses, when it's in the government's best interest to do so. And it's, the GAO Red Book identifies this as a well settled rule. And the Tuftco decision from the court claims would support that. In fact, Tuftco talks about, would shoot down one of the arguments of the plaintiff in its brief, which was the plaintiff argues in its brief that there are exceptions listed in the Assignment of Claims Act and the Assignment of Contracts Act that identify the manner in which... That's not the argument, as I understand it, that the other side made this morning. They made the argument under the case law that it doesn't apply in certain circumstances. Well, I would just say with regard to Tuftco, so Tuftco actually talks about the distinction between the exceptions in the act and the waiver of the act, and it says they are different. The exceptions are not the limitation. There are exceptions to Assignment of Conclusions, but Tuftco also identifies it as a waiver, which is separate. But with regard to the argument that it just doesn't apply at all, it's simply violative of this court's precedence and the precedence of the court of claims that, in fact, the government has no right to waive the act when it so chooses. Now, it's rare. There's no case... There's no case lost on the claims, right, on the claims issue. Is that going to be solved? Actually, Your Honor, I would look at the United Pacific case from the court of claims because I believe that was... From our predecessor. Yes. Yes, from the predecessor of the court of claims, which is a corresponding precedent on this court. There was a claim that had been assigned. Now, it was a bankruptcy. It was an issue about a bankruptcy trustee versus the original contractor and who got to assert it. But the trustee tried to assert the claim there, and the court of claims held that he really couldn't even though... I'm sorry. I'm getting mixed up between the two parties. Do you agree with what the other side said in terms of the other claims having been PSEG's claims or the diminished value? Well, it's a little misleading, Your Honor. The issue here is not... First of all, council representative, there was some kind of agreement between the government and PSEG before the government accepted the assignment. There's no agreement. The government accepted the assignment, and in their briefing anyway, Delmarva did not challenge the actual language of the assignment. Okay, so except hypothetically that the government saw an opening here because the other power company had diminished value. So this is a way they could waive their rights under the assigned claim stuff and get away with it. Is that permissible? It's not really getting away with it. I mean, what we have in this particular case is an allegation, as counsel just explained, that the allegation is that PSEG paid, let's say, $50 million less for Delmarva's interest in this property because of the delay. And the reason for the $50 million was because PSEG thought it would have to pay an extra $50 million in on-site storage costs it wouldn't have to pay anyway. PSEG is suing the government for that $50 million in on-site storage costs. Delmarva's argument is the government used to pay PSEG and it used to pay Delmarva. No, but hypothetically, we have a situation where by invoking its waiver of the claim assignment provision, the government is off the hook. Well, what we have here is not an off-the-hook. It's, well, the claim, we think, going to PSEG, PSEG will have a hard time trying to recover an extra Delmarva's $50 million. Had the government been required to pay Delmarva, we would have sought an offset against PSEG in PSEG's case. By accepting the assignment, we eliminate the uncertainty and the additional litigation of having to go back to paying Delmarva's judgment, then going to PSEG and having to try to offset. That's not the question I'm asking. The question I'm asking, let's assume that there wasn't that confusion so that the government could say there is some rational... Sorry, I was trying to make it clear. What if it was clear that the government would get a windfall, I don't call it a windfall, it's a complication, but that the government would be off the hook if the vote is waived? Well, all I can say, Your Honor, other than that's not the situation we have here, but even if that were the case, I see nothing in the statute that would... What about DAO in some of the cases that we understand? Well, DAO stands for also the well-settled proposition that the Assignment of Claims Act does in fact bar assignments of claims against the government. But if that statute is for the government's benefit, DAO doesn't talk about the issue of when the government can waive that statute, which is for its benefit. Let's just assume for the sake of argument that there was no question that they had stated a valid case in this case. That, I think, puts it in context. Despite that, could the government accept the assignment and then say, sorry, I don't honor what I need to do, as long as it's in your record, you're out if you waive the claim. Well, the government can't eliminate the claim per se. I mean, in fact, PSCG in its current suit that's still pending in the Court of Federal Claims could attempt to raise the Delmarva's takings claim as the assignee. Now, we would have defenses. The defense would be that, well, we're not paying you twice. If you're going to recover for a Delmarva's takings claim, then we're going to demand there be an offset in the same case. More bluntly, I think your argument would be you can't assign the takings claim. Except in this particular instance where the government has accepted that assignment. The government has made, and I will say, I think it is rare for the government to accept an assignment to waive the protections of the Act. But it has happened in the past when the government has made a specific, conscious, and intentional decision to do so. And that is what we did here. That is correct, Your Honor. However, I will say, when the suit... Well, when the suits were filed, we weren't even told. The government has never been notified of an assignment until after this litigation began. Well, I think that in this particular case, there certainly hasn't been any kind of gamesmanship here. What the government has done is accepted an assignment after making a conscious and intentional decision to do so. And it did so. The claim is not extinguished, per se. PSCG could still prosecute that claim if it so chose, although there would be defenses to it that the government would be able to raise. However, and there's nothing in the common law which seems to suggest that there's some limitation on the government's right to weigh the protections of a statute that are solely for the government's benefits. The plaintiff here would take that statute and turn it around so that private parties can actually enforce. It certainly doesn't have jurisdiction to set aside the arbitration award. That's an issue between two private parties. The Court of Federal Claims did, however... I don't believe that she did. She made an independent evaluation of the... It seems that in her decision she may have looked at the assignment herself and determined that based on the language of that it was a very broad assignment. And the reason she could do that here was because the government was a different party because there were different parties... The government would not be bound by the result of the assignment provision. Although I think it would be difficult for the trial court or the government to step into a dispute between two private parties to reevaluate what the scope of that assignment was. Well, that's what I'm thinking about. I mean, there are lots of cases out there and if an arbitration panel or a particular case goes the other way and decides to abrogate the assignment I'm wondering about what effect that would have on the court of claim. It would be very difficult for the government to argue if there were a binding arbitration decision between two private parties about the scope of their assignment for the government to step in and say no, no, your assignment means something else. And we want to waive it. I'm sorry? And we want to waive something. But if there were a finding that the assignment in fact did not encompass the takings claims I think the government would be hard-pressed to say that well, you know, we disagree with that and we would have to re-litigate it in the court of fundamental claims. Are there other areas in the law different subjects where the courts have held that the government may waive the protectance of the statute and act for its benefit? Well, I believe in this court's decision in AT&T we had a similar situation and I don't remember the statute number but there the statute was for the government's benefit and the court declined to allow the plaintiff to invoke its protections for its financial benefit. Well, we give your co-counsel two minutes to the participants that you used to listen to her. Thank you, Your Honor. May it please the court, Alex Tomaszczuk for defendant's appellees PSEG Nuclear LLC and Public Service Electric and Gas Company which I'll refer to as PSEG. And you're going to have to be concise. What is at issue here is which party has the contractual right to bring any claims against the Department of Energy and the government relating to its failure to dispose of spent nuclear fuel. In the purchase agreements between PSEG and the plaintiffs, Atlantic City and Delmarva assigned all of their rights and claims against the government to PSEG with one exception not relevant here. PSEG paid good money for those rights, approximately $30 million. PSEG also relieved Atlantic City and Delmarva of a host of obligations and liabilities including their potential obligation to be responsible for decommissioning the plants at the end of their operating licenses. As a result of that, we, not the plaintiffs, are the real party in interest. I would also note that we have a pending takings claim in our action which is currently before Senior Judge Foute. I would note with respect to Judge Friedman's question about the monies paid for the value and I would note the minority value that the plaintiffs had and I would refer to the appendix at page 576. This is the State of New Jersey Board of Public Utilities and I'm quoting from the appendix at page 576. This is from the Public Utilities finding. Based on the advice of its outside company, outside consultant, the company concluded that the co-owners offer represented the fair market value of the nuclear assets. As a result, the company decided to accept the co-owners offer. That means that the plaintiffs had outside consultants look at the purchase price that we offered, $30 million, concluded according to its own submission to the New Jersey Public Utility Commission that the value represented the fair market value that the offer represented the fair market value of the nuclear assets. We submit as a result of that we, not they, are the real party in interest. We have the right to bring these claims. We're based in Newark. We represent the people of New Jersey too. And what exactly is the status of your suit against them? It is pending before Senior Judge Foutet. And we actually hope to go to trial in that case sometime during the next calendar year. Has it been tried? I'm sorry, Your Honor. Has it been tried? It has not been tried. The court may recall that we were dismissed for lack of jurisdiction and this court itself concluded that the jurisdiction of the court was proper, which is one of the reasons, by the way, that there was a delay with respect to the resolution. It's presumably waiting until we dispose of this case. I'm sorry, Your Honor? It's presumably waiting until we dispose of this case. I don't know that that's true, Your Honor, but certainly the disposition of this case would certainly facilitate us going forward. Thank you very much. Thank you. Thank you, Your Honor. Just a couple of quick points. The fair market value determination was the fair market value of a carton of 11 eggs and it took into account the fact that the government breached the government's failure to discharge its obligations to impact the value of the plan. Secondly, this notion that there's a danger of double recovery here is just a red herring. The government is well aware of the fact that public service benefited from the lower price. We've pointed it out many times. The notion that they're going to pay Atlantic City and Delmarva for the diminished value and then pay it to public service again couldn't happen, particularly not given the position that they've taken. The notion, Judge Friedman, that this arises under a contract and that this all has to be with contract rights, it's interesting. The standard contract isn't a contract. It's a regulation. It was imposed upon the parties. If you wanted to continue... It's not a contract. I'm reading from the government's... It is a contract of adhesion. It was a standard contract. It was obligatory. There were no changes to that contract. If you look at page 20 in the government's brief, it says to the extent that this court's analysis and this appeal requires interpretation of the standard contract, those terms are generated through notice and conduct rulemaking which should be interpreted in accordance with the rules applicable to interpreting regulations. It's not a contract. The statute required them to state terms on which you could continue to operate and that contract was imposed on other parties. With regard to the waiver cases, Tupco and the United Pacific in particular, there the claims were liquidated. The amount was known. The government was a stakeholder. And the issue was whether by accepting performance by the assignee, the government had waived their objection to the assignment. That's what those cases were about. It was not about the fact that takings claims aren't permissible. The only case cited by the government in their brief is systems fuel, a case before the court of federal claims. And there the takings claim was dismissed without prejudice because the court recognized the validity of the claims. So it was not a ruling. Those are my points. All right. Thank you very much. Thank you counsel on both sides. The case is submitted. Because of the interest in the next case and because this is a rather small forum, we are going to take a 15-minute recess and we will resume in court room 402 and hear the last case, Broadcom versus Qualcomm in that courtroom. All rise.